In re Travis L. **CARTER** and Mary Carter, Debtors.

Eric M. Haley, Chapter 7 Trustee, Plaintiff,

v.

Barclays Bank Delaware, a Delaware Corporation, Defendant.

Bankruptcy No. 2:12–bk–16174–RJH.

Adversary No. 2:13–ap–00412–RJH.

United States Bankruptcy Court, D. Arizona.

Signed March 3, 2014.

Ryan R. Seidel, Guttilla Murphy Anderson, Phoenix, AZ, for Plaintiff.

Scott K. Brown, Justin J. Henderson, Lewis Roca Rothgerber LLP, Phoenix, AZ, for Defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

RANDOLPH J. HAINES, Chief Judge.

On cross-motions for summary judgment, the issues are whether the Debtors' payments on their credit card within the preference period were made in the ordinary course of business, and the extent to which the Trustee's preference action is subject to a subsequent new value defense.

### Background Facts

Debtors Travis and Mary Carter filed Chapter 7[1] on July 19, 2012. During the 90 days prior to the petition date, the Debtors paid a total of $10,868.58 on their credit card account with Barclays Bank Delaware. This total amount was paid in four payments: $1,000.00 paid on April 20; $4,868.58 paid on May 4; $2,500.00 paid on June 11; and $2,500.00 paid on June 18.

Trustee filed an adversary proceeding against Barclays Bank seeking to recover the entire $10,868.58 as an avoidable preference. Prior to answering, Barclays Bank sent a letter to the Trustee, accompanied by credit card statements, seeking to demonstrate that all of the payments made within the preference period were within the ordinary course of the Debtors' prior business with Barclays Bank. The letter also included a chart demonstrating that after each of the allegedly preferential payments was made there were subsequent new charges incurred, except to the extent of $3,093.50. Barclays subsequently filed an answer that asserted the ordinary course defense of § 547(c)(2), the subsequent new value defense of § 547(c)(4), and that the Bankruptcy Court lacks authority to enter final judgment against the Defendant, although admitting that this is a core matter under 28 U.S.C. § 157(b)(2)(F).

The Trustee moved for summary judgment seeking avoidance and liability for the full $10,868.58. The Trustee's motion did not address or even mention the ordinary course and subsequent new value defenses. Barclays filed a joint response to the Trustee's motion and a cross-motion for summary judgment. Barclays' cross-motion was supported by a statement of facts that included the Debtors' payment history for the prior three years, and also the subsequent new value chart. Barclays' statement of facts summarized these bill-

---

1. Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532; rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

ing statements as indicating that "[t]he Debtors generally paid either the full amount due or an amount close to it." The statement of facts also included studies by AARP and TransUnion. The AARP study showed that around 58% of people pay the full balance each month, and the TransUnion study estimated that around 42% of cardholders pay the full amount due each month. Barclays' response to the Trustee's motion argued that the payments during the preference period were similar to those during the prior three years because they were often for the exact amount billed, and often for the full amount due according to the most recent bill plus amounts that had been incurred since that statement, and that only one of the payments during the preference period was late, and then only by three days, which was also consistent with past practices.

Barclays' response and cross-motion also stated that "Barclays does not consent to the entry of a final order or judgment against it by this Court," citing *Stern*[2] and *Bellingham*.[3] The cross-motion also concluded, however, with a single sentence: "Barclays respectfully requests that the Court enter judgment in favor of Barclays, declaring that the Trustee take nothing on his complaint, and dismissing this adversary with prejudice."

After oral argument on February 24, 2014, the Court took the matter under advisement.

### Analysis

■ Based on the undisputed facts, the Court finds and concludes that there is no material fact dispute that all of the payments during the preference period were made in the ordinary course of business

pursuant to § 547(c)(2). The payments were all made when due except for one, and it was only three days late. The payments were for the full balance due, or close to it, and often covered charges that had been incurred after the statement date and prior to the payment. Such payments of the full balance due, or close to it, were entirely consistent with the Debtors' previous ordinary course of business with the Barclays credit card. They are also consistent with the ordinary course of business in the credit card industry.

The Trustee makes only two arguments that the payments during the preference period were outside of the previous ordinary course. First, the Trustee argues that most of the payments during the preference period exceeded the precise amount of the statement that had been issued, although the Trustee admits that "[p]resumably, the Debtors were paying off the entire 'outstanding balance' during the preference period, which would include additional charges subsequent to the statement being prepared." Second, the Trustee argues that two of the payments made during the preference period followed the issuance of a single statement, instead of that statement being paid in full by a single payment. In its reply, Trustee argued that similar overpayment of statements, presumably to pay the entire outstanding balance, had been made eleven times in the approximate two-year period preceding the filing. Based on these undisputed facts, there is no material fact dispute that the Debtors' payments were in the ordinary course of business, both of their own prior business with Barclays and in the industry generally for purposes of § 547(c)(2)(A) and (B). After the BAPC-

---

2. *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).

3. *In re Bellingham Ins. Agency, Inc.,* 702 F.3d 553 (9th Cir.2012), *cert. granted sub nom. Exec. Benefits Ins. Agency v. Arkison,* —— U.S. ——, 133 S.Ct. 2880, 186 L.Ed.2d 908 (2013).

PA amendments, either kind of ordinary course establishes a complete defense.

■ As an alternative, the Court also finds and concludes that Barclays would be entitled to summary judgment, except to the extent of $3,093.50, because there are no material facts in dispute that Barclays advanced new value after each of the challenged payments. The subsequent new value defense would be available if the ordinary course did not provide a complete defense. Barclays' chart demonstrates that after each of the challenged payments, subsequent new value was advanced. Although all such subsequent new value was paid for, in the absence of an ordinary course defense those payments of the new value would also be avoidable. Because the payment of the subsequent new values would also be avoidable, the undisputed facts demonstrate that on account of that new value the Debtors did not make an otherwise unavoidable transfer; to the contrary, it made only avoidable transfers (on the assumption the ordinary course defense does not apply). Therefore all of the new value would provide an alternative defense pursuant to § 547(c)(4)(B), except for $3,093.50, and the Trustee's argument to the contrary simply makes no sense.

■ In that event, however, Barclays would not be entitled to summary judgment on the remaining preference liability of $3,093.50 on account of the § 547(c)(9) defense. That section provides a defense only if "the aggregate value of all property that constitutes or is affected by such transfer is less than $6,225." The language of that defense is internally contradictory or at best ambiguous because the term "aggregate" implies a summation of various transfers, while the language "such transfer" implies the defense should be applied on a payment by payment basis. This Court concludes that the better reading is that the aggregate of all transfers challenged in a preference action must be less than $6,225 in order for the defense to apply.[4] Consequently the defense does not apply when the complaint seeks liability for greater than that amount, but the ultimate liability is determined to be less than that amount due to the application of other defenses. This conclusion follows because the minimum amount referred to in § 547(c)(9) is the aggregate amount of the transfers that are avoidable pursuant to § 547(b), because "such transfer" refers back to the transfer identified in the introductory language of § 547(c), and that implicitly refers to the transfer[s] referenced in the introductory language of § 547(b). There is no basis to conclude that "such transfer" instead refers to the ultimate money judgment that a trustee could recover pursuant to § 550(a).

Finally, Barclays' motion argued that the Trustee's motion violated Federal Civil Rule 11 because the Trustee was aware of Barclays' affirmative defenses and yet moved for summary judgment presenting only portions of the record while knowingly omitting evidence of the defenses or a genuine issue of material fact.[5] Barclays' motion then added, however, that Barclay is not seeking sanctions under Federal Civil Rule 11 at this time, but the Trustee's misconduct should not go unnoticed.

The Trustee's conduct has been noted. However, Barclays would not be entitled

---

4. *See, e.g., Elec. City Merch. Co. v. Hailes (In re Hailes)*, 77 F.3d 873 (5th Cir.1996).

5. *Estate of Gianna Blue v. Cnty. of Los Angeles*, 120 F.3d 982 (9th Cir.1997) (Rule 11 applies when a plaintiff should have known of a defense such as statute of limitations that bars the claim); *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 180 P.3d 977, 983 (Ct. App.2008).

to sanctions under Rule 9011(c)(1) unless it were made by separate motion and unless and until the motion had been served on the Trustee at least 21 days prior to its filing with the Court.

### Conclusion

For the foregoing reasons, Barclays Bank is entitled to summary judgment, that the Trustee shall take nothing by his complaint.

■ This leaves the question of the proper form of the final ruling in this Adversary proceeding. As noted, Barclays has both objected to the constitutional authority of this Court to enter a final judgment under *Stern*, and has, by its motion for summary judgment, specifically asked the Court to enter final judgment in favor of Barclays. Barclays cannot have it both ways, and it is difficult to understand how both the objection to final judgment and the request for entry of final judgment could have been filed in compliance with Rule 9011(b).

Under *Bellingham*,[6] which is currently the governing law in this Circuit, the Court must find and conclude that Barclays has either waived or forfeited its *Stern* objection by its litigation conduct. One of the underlying reasons for the doctrine of waiver or forfeiture by litigation conduct is to prevent litigation conduct that could be described as sandbagging, "heads I win; tails you lose," or second bite at the apple strategy. If a *Stern* objection were not deemed waived by the party making it seeking summary judgment, then the party could seek or permit a substantive ruling by the Bankruptcy Court, and then waive that objection if the ruling is favorable but insist on it if unfavorable, and get a second bite at the apple. To avoid the possibility of that kind of litigation conduct by virtually any defendant in a bankruptcy adversary proceeding or contested matter, this Court must conclude that *Bellingham* necessarily implies that a *Stern* objection is waived or forfeited whenever the party making it requests a substantive ruling from the Bankruptcy Court.[7]

■ Indeed, the *Stern* objection may be waived any time the objector merely acquiesces in the Bankruptcy Court hearing any aspect of a case in a posture that may lead to a substantive ruling. The improper litigation strategy could equally be employed by the objector merely responding to summary judgment being sought by a debtor or trustee. Or, it could employed by a defendant who allows a matter to be tried by the Bankruptcy Court. Obviously if judgment is favorable to the objector he will then waive it, but will insist upon it if judgment is unfavorable. That strategy would be available even if the *Stern* objector is vociferously making the objection, as loudly as Bre'r Rabbit, even while trying the case to the Bankruptcy Court. Perhaps to avoid such litigation strategy it will be necessary for courts to adopt a rule that the *Stern* objection is waived or forfeited unless the objector promptly moves for withdrawal of the reference and prosecutes that motion to conclusion in the District Court, as the *Bellingham* defendant

---

6. *Supra* note 3.

7. *See, e.g., Hasse v. Rainsdon (In re Pringle)*, 495 B.R. 447, 458 (9th Cir. BAP 2013) ("Thus, under *Bellingham*, sandbagging can supply consent through the knowing failure to object while purposefully proceeding through the bankruptcy court system."); *Ogier v. Johnson*, 2013 WL 6843476 (N.D.Ga. Dec. 27, 2013); *Corliss Moore & Assocs. v. Credit Control Servs., Inc.*, 497 B.R. 219 (E.D.Va.2013); *Ctr. Operating Co., LP v. Base Holdings, LLC (In re Base Holdings, LLC)*, 2013 WL 357607 (N.D.Tex. Jan. 30, 2013).

apparently failed to do.[8] But this Court need not make that determination on these facts, because here the *Stern* objection was waived or forfeited by Barclays Bank affirmatively asking for entry of final judgment by the Bankruptcy Court.

For these reasons, counsel for Barclays Bank is requested to upload an appropriate form of final judgment in its favor. In the event any Article III court subsequently determines, in this case, that this Court lacked constitutional or statutory authority to enter such final judgment, then this Court deems this Opinion and Order and the final judgment to constitute proposed findings of fact and conclusions of law pursuant to, or by analogy to, 28 U.S.C. § 157(c)(1).